UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| V. | : | |
| | : | |
| THE HOTCHKISS SCHOOL, | : | |
| | : | |
| Defendant. | : | FEBRUARY 5, 2015 |

## COMPLAINT

### Introduction

When the plaintiff was 14 years old he was entrusted to the care and supervision of The Hotchkiss School, a private boarding school in Lakeville, Connecticut.  The school promised, and John trusted, that the school would do everything in its power to keep him safe from harm.  Hotchkiss betrayed that trust.  Instead of a safe and secure community, John entered an environment of well-known and tolerated sexual assaults, sexually violent hazing, and pedophilia.  Upper classmen – including school-appointed senior dormitory proctors – assaulted him by forcibly removing his pants and underwear, hitting his buttocks and genitals, and sticking objects in his anus.  A male teacher, who was a master in John's dormitory, fondled John's genitals, and later drugged and anally raped him.  These

horrifying acts and others were inflicted on school property, during the school year, and under the noses of the school's teachers and administrators. John Doe brings this Complaint to seek recompense for the injuries and life-long suffering The Hotchkiss School inflicted on him and to shine a light on these and similar events so that the wrongdoers may be held accountable and justice may be done.

**I.      Jurisdiction and Venue**

1. Jurisdiction obtains pursuant to 28 U.S.C. § 1332(a).

2. The plaintiff resides in and is a citizen of the State of New York.

3. The defendant is a non-stock corporation formed pursuant to the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

4. The amount in controversy vastly exceeds $75,000.00, exclusive of interest and costs.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(a) in that the defendant resides in this District and the events, acts and omissions giving rise to the plaintiff's claims occurred in this District.

6. The defendant's negligent acts and omissions occurred while the plaintiff was a minor, the action is brought within 30 years from the date the plaintiff attained the age of majority, and this action seeks damages caused by sexual

abuse, sexual exploitation and sexual assault; accordingly, this Complaint is timely filed pursuant to Connecticut General Statutes § 52-577d.

## II.     Parties

7.     John Doe attended The Hotchkiss School as a boarding student in the 1980's beginning when he was 14 years old.

8.     The Hotchkiss School, founded in 1891, is a private college-preparatory boarding school for grades nine through 12 located in Lakeville, Connecticut.

## III.     First Claim for Relief (Negligence)

9.     At the time of the sexual assaults described in this Complaint, The Hotchkiss School charged many thousands of dollars per year for the privilege of attending the school and residing in a dormitory on school grounds.

10.     In exchange for the substantial monetary compensation charged for the attendance and residence of John and the other minor children in the school's care and custody, Hotchkiss assumed responsibility for, among other things, the students' protection, safety and well-being.

11.     The school promised John that the health and welfare of the students was the school's highest priority.

12. The school accepted a duty to John and to the other minor children in its care and custody to do everything within its power to protect them from sexual abuse by other students and by the school's faculty; and even prior to John choosing to attend the school, Hotchkiss's admissions director promised him that rules prohibiting consensual and non-consensual sexual activity were strictly enforced.

13. The school agreed that it had a duty and responsibility to keep the children in its care and custody safe from harm.

14. Notwithstanding these duties, responsibilities and promises, at the time that John entered and attended The Hotchkiss School, the school and its teachers and administrators knew that there was a history and tradition at the school of older male students, including students 18 years of age and older, subjecting younger students to sexualized hazing.

15. The history and tradition of hazing, which was not disclosed to John at any time prior to his arrival at the school, included upper classmen inflicting sexualized assaults on younger students, including paddling the younger students on their naked buttocks with wooden paddles and other humiliating and traumatizing forcible sexualized touching.

16.     The school and its teachers and administrators permitted and condoned the tradition of hazing, and they allowed the sexual assaults to occur without punishment and without even a meaningful threat of punishment.

17.     As a result of the school's encouragement of the tradition of sexualized hazing, and its failure to prevent such assaults and to punish the perpetrators, upper classmen sexually assaulted John multiple times.

18.     At the times John was assaulted, he was 14 years old and he was slight in stature.

19.     The assaults were inflicted by groups of school-appointed senior dormitory proctors.

20.     During these assaults, the proctors, rooted on by others, forced John to lower his pants and underwear to his ankles and to bend over, they hit his naked buttocks and testicles repeatedly with a wooden paddle, and they forcibly inserted objects into his anus.

21.     The assaults caused John to suffer severe physical pain and humiliation.

22.     John reported the sexual assaults to his faculty dormitory corridor master, who told John to try to earn the respect of the older students who were assaulting him.

23. The corridor master also told John that complaining about the hazing and assaults would not be a good start for John's reputation at the school.

24. The Hotchkiss Assistant Headmaster, after learning of the assaults, asked John if his bottom was feeling better. Other than making that one comment, the Assistant Headmaster did nothing in response to the assaults.

25. Also notwithstanding the school's duties, responsibilities and promises to keep John safe from harm, at the time that he entered and attended The Hotchkiss School, the school and its teachers and administrators knew, and should have known, that at least one of the school's male teachers and dormitory masters was a pedophile.

26. The school knew and should have known that teacher and dormitory master Roy G. Smith, Jr. a/k/a "Uncle Roy", was sexually attracted to pubescent boys.

27. At the time John entered The Hotchkiss School, Smith had been employed by the school for many years.

28. Smith resided in an apartment connected to the dormitory to which John was assigned when he was 15 years old.

29. During Smith's tenure at the school, including prior to and during the time John was exposed to Smith, the school knew and should have known that Smith held and expressed sexualized feelings about the minor boys in his care.

30. During Smith's tenure at the school, including prior to and during the time John was exposed to Smith, the school knew and should have known that Smith frequently discussed schoolboy homosexuality and homo-erotic topics with male students in his apartment at night.

31. Prior to and during the time that John was exposed to Smith, Smith also worked in an athletic training room near the boys' locker room in the gym, a job which allowed Smith to inspect, massage, touch and leer at the naked and partially naked bodies of young school boys.

32. In his capacity with the Hotchkiss School athletic department, before and during the time that John was exposed to him, Smith frequently did inspect, massage, touch and leer at the naked and partially naked bodies of young schoolboys.

33. John was a member of the school's athletic teams, and, as such, was exposed to Smith in Smith's capacity with Hotchkiss's athletics programs.

34. On several occasions, Smith inspected, massaged and fondled John in inappropriate and sexualized ways, including on several occasions reaching into John's shorts and touching John's penis and scrotum.

35. These sexual assaults occurred in several places on school grounds, including in the athletic center and in Roy Smith's Hotchkiss apartment.

36. When John was 15 years old, Roy Smith went further: he invited John into his apartment in the late evening hours, drugged John into semi-unconsciousness with a pill that he misrepresented as an aspirin, and anally raped John while he was helpless and alone.

37. John came to during the rape, groggy and impaired, with his pants and underwear around his feet, face down on Smith's sofa, with Smith over him pushing himself into John's anus.

38. When John became more fully conscious, he pulled up his pants, stumbled out into the dormitory hallway, then to a dorm bathroom where he vomited, and then returned to his dorm room.

39. At the time that The Hotchkiss School exposed John to "Uncle Roy" Smith, it was on actual and constructive notice that Smith desired young boys and had acted on his desires in the past by engaging young boys in sexualized conversation and by touching young boys in inappropriate and sexual ways.

40. The school's affirmative acts – including housing Smith in and giving him unfettered access to and authority over a boys' dormitory, allowing him unsupervised access to vulnerable young children, and allowing him to work in the athletics program and locker room areas where he was able to touch and leer at the naked and partially-clothed bodies of pubescent boys – created, and exposed John to, a known high degree of risk of harm.

41. The school was on actual and constructive notice of Smith's aberrant character, past conduct, and tendencies.

42. The school was on actual and constructive notice of the temptation and opportunity afforded to Smith for molesting young boys.

43. The school was on actual and constructive notice of the gravity of the harm that would result if Smith molested one or more of the boys in the school's care and custody.

44. The school knew that no other person or entity would assume the responsibility for preventing Smith from molesting young boys.

45. Even if the school had not been on actual or constructive notice of the past aberrant behavior and propensities of "Uncle Roy", it knew and should have known that housing adult males who are sexually attracted to pubescent schoolboys with, and giving them unrestricted access to, a never-ending community of young vulnerable boys created a high degree of risk of inappropriate and sexualized behavior.

46. Thus, the school created a situation that it knew and should have known was likely to be dangerous to John and to the other young children in its care.

47. Despite having created the dangerous situation, the school failed and refused to take appropriate precautions against the risk of harm.

48.     According to a published biography of The Hotchkiss School authored by Hotchkiss alumni and based on written and taped interviews in the school's archives of former students and faculty, Smith was not the only Hotchkiss teacher who had sexually abused and assaulted young boys on school property before John attended The Hotchkiss School.

49.     After being anally raped by Roy Smith, John reported the rape to Hotchkiss School teachers, staff and administrators.

50.     John reported both the hazing sexual abuse and the rape by "Uncle Roy" to a school health services counselor from whom John was seeking care and treatment for the trauma that had been inflicted on him.

51.     The counselor took no steps to protect John and other vulnerable children from further assaults by Smith, she took no steps to hold Smith accountable for raping a young boy, and she took no steps to protect John and other vulnerable children from further sexual hazing.

52.     John also reported the rape to his faculty advisor, and he confided in his advisor the extreme confusion and mental suffering he was experiencing as a result of "Uncle Roy's" abuse.

53.     John's advisor took no steps to protect John and other vulnerable children from further assaults by Smith, and took no steps to hold Smith accountable for raping a young boy; rather, the advisor dismissed John's concerns.

54. After "Uncle Roy" raped John, John wrote an article intended for the student newspaper, discussing the failure of the school's mental health counselors, faculty and administrators to respond appropriately to students' complaints, including John's complaints of having been sexually assaulted by the proctors and by "Uncle Roy". John gave a copy of the proposed article to the school's headmaster.

55. The headmaster told John that he was already aware of John's complaints, he took no steps to protect John and other vulnerable children from further assaults by Smith, and he took no steps to hold Smith accountable for raping a young boy.

56. Instead, the headmaster forbade John from publishing the article, and he conspired to prevent John from informing the students, their parents and the school community about Smith's sexual assault and his aberrant and predatory propensities and behavior.

57. Among other wrongful acts in furtherance of his efforts to hide the rape and to bury Smith's history of sexually molesting young boys at the school, the headmaster threatened to tell John's parents that John was homosexual if he complained publicly about the rape.

58. As a result of The Hotchkiss School's acts and omissions, John's ability to engage in normal life's activities has been permanently impaired and he has been and will be unable to lead and enjoy a normal life.

59. The harm inflicted on John as a young vulnerable boy at The Hotchkiss School has adversely affected his ability to enter into and maintain lasting meaningful relationships with others.

60. John's ability to maintain intimate physical, sexual and emotional relationships with other human beings has been irreparably damaged.

61. As a result of the defendant's negligence, John has sustained physical pain and suffering.

62. As a result of the defendant's negligence, John has sustained, and will continue over the course of his lifetime to suffer, severe emotional distress and mental pain and anguish.

63. John's injuries and damages were caused by the negligence of The Hotchkiss School, its teachers, administrators, employees and agents, for whose negligence the school is liable, in the ways previously described and in the following ways:

    a. The school, by commission and omission, allowed and encouraged a tradition of hazing of young boys by upper

        classmen, including hazing that consisted of sexual assaults and humiliation;

b.     The school, by commission and omission, failed and refused to train and supervise school teachers and other school employees, including "Uncle Roy" Smith;

c.     The school hired teachers and other employees, including Smith, despite actual or constructive knowledge of their propensity and desire to molest young boys;

d.     The school retained teachers and other employees, including Smith, despite actual or constructive knowledge of their propensity and desire to molest young boys; and

e.     The school failed to warn John of the risk of harm to which he was subjected while attending The Hotchkiss School.

64.     The Hotchkiss School owed John a duty of care, it breached that duty, its breach caused John to be assaulted and molested, and John suffered damages as a result.

## IV.   Second Claim for Relief (Recklessness)

1.     Paragraphs 1 through 64 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Second Claim for Relief, as if fully set forth

herein.

2.    The Hotchkiss School, acting through its administrators, teachers and staff, was consciously aware of the fact that it created a substantial risk to John Doe.

3.    Notwithstanding the school's conscious awareness of the risk to John, the school failed to take necessary and appropriate steps to reduce or eliminate the risk.

4.    Notwithstanding the school's conscious awareness of the risk to John, the school took affirmative steps to exacerbate the risk and to make harm and injury to John more likely.

5.    The injuries suffered by John were caused by the reckless or callous indifference, or the wanton misconduct, of the defendant.

### V.    Third Claim for Relief (Negligent Infliction of Emotional Distress)

1.    Paragraphs 1 through 64 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Third Claim for Relief, as if fully set forth herein.

2.    The Hotchkiss School created an unreasonable risk of causing John Doe emotional distress.

3.    John's distress was foreseeable.

4.    The emotional distress was severe enough that it might result in

illness or bodily harm.

     5.     The school's conduct was the cause of John's distress.

### VI.    Fourth Claim for Relief (Intentional Infliction of Emotional Distress)

     1.     Paragraphs 1 through 64 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Fourth Claim for Relief, as if fully set forth herein.

     2.     The Hotchkiss School intended to inflict emotional distress or it knew or should have known that emotional distress was the likely result of its conduct.

     3.     The school's conduct was extreme and outrageous.

     4.     The school's conduct was the cause of John's distress.

     5.     The emotional distress sustained by John was severe.

### VII.    Fifth Claim for Relief (Breach of Fiduciary Duty)

     1.     Paragraphs 1 through 64 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Fifth Claim for Relief, as if fully set forth herein.

     2.     A fiduciary relationship existed between The Hotchkiss School and John Doe which gave rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in

any manner relating to the plaintiff.

    3. The school advanced its own interests to the detriment of the plaintiff.

    4. John has sustained damages.

    5. John's damages were proximately caused by the school's breach of its fiduciary duty.

### VIII. Prayer for Relief

Wherefore, the plaintiff prays for the following relief:

    1. Compensatory damages;

    2. Punitive damages; and

    3. Such other relief as the Court deems just and proper.

PLAINTIFF

BY s/Antonio Ponvert III
ANTONIO PONVERT III ct17516
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 FAIRFIELD AVENUE
BRIDGEPORT, CT 06604
Tel: 203-336-4421
(203)368-3244 (facsimile)
aponvert@koskoff.com

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| THE HOTCHKISS SCHOOL, | : | |
| | : | |
| Defendant. | : | FEBRUARY 5, 2015 |

## CLAIM FOR JURY TRIAL

Plaintiff, through counsel, claims this matter for trial by jury.

                      PLAINTIFF

                      BY s/Antonio Ponvert III
                          ANTONIO PONVERT III ct17516
                          KOSKOFF, KOSKOFF & BIEDER, P.C.
                          350 FAIRFIELD AVENUE
                          BRIDGEPORT, CT 06604
                          (203)336-4421
                          (203)368-3244 (facsimile)
                          aponvert@koskoff.com