# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE,<br>    *Plaintiff*,<br>v.<br><br>HOTCHKISS SCHOOL,<br>    *Defendant.* | No. 3:15-cv-00160 (VAB) |

**RULING AND ORDER ON DOCUMENTS REVIEWED *IN CAMERA***

John Doe has sued The Hotchkiss School ("Hotchkiss") for, among other things, negligence, and fraudulent concealment of severe sexual abuse.

Mr. Doe seeks discovery of documents characterized by Hotchkiss as protected by the attorney-client privilege, the attorney work product doctrine, or related public policy.

For the following reasons, the Court **DENIES IN PART, FINDS MOOT IN PART, AND GRANTS IN PART** the motion to compel disclosure. To the extent that a protective order is necessary regarding the information ordered disclosed here, the parties shall seek to reach an agreement on this issue and report back to the Court by November 9, 2018.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Doe sued Hotchkiss in February 2015. ECF No. 1. The parties have since been engaged in a lengthy and fraught course of discovery, which has yet to conclude. Approximately one year after Mr. Doe sued Hotchkiss, Hotchkiss's outside counsel, Wiggin & Dana LLP, retained Carlton Fields to conduct an investigation of reports of sexual misconduct by members of the Hotchkiss faculty and staff.

On February 7, 2018, Mr. Doe served a subpoena on Carlton Fields seeking "[a]ll communications, statements, or information received in connection with the 'independent

1

investigation' concerning reports of sexual misconduct and/or inappropriate 'hazing' behavior towards any Hotchkiss student or employee that occurred prior to April 8, 1987." Hotchkiss moved for a protective order or to quash the subpoena Mr. Doe served on Carlton Fields. *See Hotchkiss School v. Doe*, 3:18-mc-00037 (VAB), ECF No. 15.

After considering oral and written submissions from the parties, on May 9, 2018, the Court issued an Order directing the parties to:

> submit jointly a stipulation providing for the production of: (a) documents related to and prepared during the relevant time period for Mr. Doe's lawsuit and in the possession of the law firm of Carlton Field as a result of its pending investigation of sexual misconduct at Hotchkiss prompted by this litigation; and (b) a privilege log accounting for and describing any other material or information sought by Mr. Doe but claimed by Hotchkiss to be protected by the attorney-client privilege, the work product doctrine, or any other relevant privilege, including, but not limited to, the names, dates, or any other identifying information of witnesses probative of Mr. Doe's case, consistent with Federal Rule of Civil Procedure 26(b)(5).

ECF No. 176.

On June 22, 2018, the parties jointly moved for a discovery conference to address a lingering dispute between the parties over (1) the sufficiency of Hotchkiss's privilege log produced under the Court's May 23, 2018 scheduling order; and (2) the completeness of Hotchkiss's production of documents produced under that same scheduling order. ECF No. 199.

The parties were provided with an opportunity to file written submissions with the Court, and on July 24, 2018, the Court heard oral argument. ECF Nos. 200, 201, 205, 206, 208, 209, 215. Given the challenge of assessing the proportionality of this discovery in the abstract and this Court's duty to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(B), the Court conducted an *in camera* review of the disputed documents and then resolve the outstanding discovery issues. ECF No. 217.

Following a telephonic status conference on September 11, 2018, the Court instructed Hotchkiss to supplement its privilege determination for Exhibit 17 and the last two pages of Exhibit 122. ECF No. 239. The Court also requested that Mr. Doe also file a response to the supplemental briefing by Hotchkiss. *Id.*

## II.  STANDARD OF REVIEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Even after the 2015 amendments to the Federal Rules of Civil Procedure, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Bagley v. Yale Univ.*, No. 3:13-cv-1890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (citing *State Farm Mut. Automobile Ins. Co. v. Fayda*, No. 14-cv-9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 12, 2015)). This Court has "wide latitude to determine the scope of discovery." *In Re Agent Orange Product Liability Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *see also Mirra v. Jordan*, No. 13-cv-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion").

Under Second Circuit precedent, to invoke the attorney-client privilege, "a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *Musco Propane, LLP v. Town of Wolcott*, No. 3:10-cv-1400 JCH, 2011 WL 6300235, at *1 (D. Conn. Dec. 15, 2011) (internal quotation marks omitted) (quoting *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "The work product doctrine protects the discovery of memoranda, correspondence, briefs, mental impressions and personal beliefs

3

prepared in anticipation of litigation." *Buck v. Indian Mountain Sch.*, No. 15 CV 123 (JBA), 2017 WL 421648, at *2 (D. Conn. Jan. 31, 2017) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). The party invoking a privilege must carry the burden of showing its applicability. *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (listing cases).

"The purpose of the privilege is 'to prevent a party from taking advantage of his adversary's efforts to gather material for litigation, and to foster the adversary system by providing a safe harbor within which an attorney can analyze and prepare his client's case.'" *Hildebrand v. Wal-Mart Stores, Inc.*, 194 F.R.D. 432, 434 (D. Conn. 2000). "For 'fact' work product, that is work product that does not contain legal opinions or conclusions, the party seeking discovery must meet the 'substantial burden' and 'undue hardship' tests outlined in Rule 26." *FDIC v. Wachovia Ins. Svs., Inc.*, 241 F.R.D. 104, 106 (D. Conn. 2007) (citation omitted). "Opinion work-product is given stronger protection and is discoverable only in rare circumstances where the party seeking discovery can show extraordinary justification." *Id.* (citations omitted).

## III. DISCUSSION

The parties agree that two categories of documents are at issue: (1) communications from various individuals to Carlton Field about incidents of negligence and fraudulent concealment of severe sexual abuse at Hotchkiss and (2) the notes and memoranda created by persons associated with Carlton Fields who interviewed or met with individuals who came forward to report incidents of negligence and fraudulent concealment of severe sexual abuse at Hotchkiss. From there, they part ways.

4

Mr. Doe argues that he is entitled to all of the documents in the first category and information that is "purely factual" with respect to the second category. The primary contention being that the files in question, while undoubtedly confidential, are not privileged. At the same time, Hotchkiss argues that the former set of documents are privileged, or, alternatively, they should be protected from disclosure as a matter of public policy, and the latter universe of documents are work product from which the mental impressions of the attorney who created the document cannot be readily extracted.

### A. The Majority of Documents Requested by Mr. Doe are Privileged

After reviewing the documents *in camera*, the Court has determined that nearly all of the requested documents are privileged. Mr. Doe sought "[a]ll communications, statements, or information received in connection with the 'independent investigation' concerning reports of sexual misconduct and/or inappropriate 'hazing' behavior towards any Hotchkiss student or employee that occurred prior to April 8, 1987." ECF No. 15. Upon review, the Court has determined that the vast majority of disputed documents fall into three broad categories: (1) e-mail communications related to the Carlton Fields investigation; (2) attorney notes related to the Carlton Fields investigation; and (3) memos related to Carlton Fields investigation. All but two exhibits in question are protected by privilege.

Under well-settled law regarding privilege, those "memoranda based on oral statements of witnesses . . . would reveal the attorney's mental processes[, and] . . . [i]t is clear that this is the sort of material the draftsmen of [Rule 26(b)] had in mind as deserving special protection." *Upjohn v. United States*, 449 U.S. 383, 400 (1981). And "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements[,]" which is precisely at issue in these categories of documents, "is particularly disfavored because it tends to reveal the attorney's mental

5

processes." *See id.* at 399; *see also Hildebrand*, 194 F.R.D. at 434. Accordingly, Carlton Fields attorney communications, notes and memorandum of witness interviews, which include mental impressions and thought processes, are protected work-product, and as a result, have been appropriately withheld by Hotchkiss.

In order to make a privilege determination related to an investigation, the Court must examine the role of the attorneys in this case. Specifically, the Court must consider "the duties they performed, and must determine whether they were providing legal advice or were serving as independent investigators." *Buck*, 2017 WL 421648, at *4. Here, although Mr. Doe argues that Hotchkiss has improperly withheld responsive communications related to the Carlton Fields investigation, this too narrowly construes the scope and purpose of attorney privilege protections.

During the course of its representation, Wiggin & Dana, outside counsel for Hotchkiss, hired Carlton Fields to conduct an investigation and provide legal advice and a report at its conclusion. *The Hotchkiss School v. Doe*, No. 18-mc-00081, ECF No. 1. For the investigation, Carlton Fields attorneys interviewed alumni, took notes, and reduced those impressions into summary memoranda: quintessential attorney work product. *See Buck*, 2017 WL 421648, at *2 ("The work product doctrine protects the discovery of memoranda, correspondence, briefs, mental impressions and personal beliefs prepared in anticipation of litigation").

Mr. Doe's requests also included the names of those that voluntarily came forward during the course of the Carlton Fields investigation and details of meetings between Carlton Fields counsel and those formers students during the course of that investigation. More specifically, Mr. Doe seeks e-mails containing communications between Carlton Fields attorneys and Hotchkiss alumni interviewed during the course of their investigation. The work of attorneys during a fact-finding investigation, however, falls comfortably "within the protection of the attorney-client

privilege." *See Buck*, 2017 WL 421648, at *4 (citing *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010) (citing *Upjohn*, 449 U.S. at 401)).

Mr. Doe nevertheless seeks the contents of these interview notes and e-mails, arguing that Carlton Fields was hired for the purposes of investigating—not providing legal services. But interviews, notes, and memorandum related to the investigation are prerequisites for the provision of the legal advice and final report that Carlton Fields and Wiggin & Dana were retained to provide. *The Hotchkiss School v. Doe*, No. 18-mc-00081, ECF No. 1. And Carlton Fields was retained specifically to aid Hotchkiss in its response to claims of sexual abuse and in anticipation of, and in response to, this very litigation.

Nevertheless, the Court has conducted an *in camera* review of these documents and determined that the majority of these documents contain attorney work product. Specifically, ninety-nine of the one hundred and twenty five exhibits reviewed *in camera* were attorney notes and memorandum protected as attorney work product. *See In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d at 183–84 ("opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product") (citing *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998)). Of the remaining documents, twenty-four are communications made during the course of the investigation and are protected as attorney-client privilege. *See Buck*, 2017 WL 421648, at *4 ("factual investigations performed by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege"). Another document, part of Exhibit 122, already has been produced, as discussed below. Finally, as discussed below, the remaining document, Exhibit 17, fails to meet the criteria set forth below for non-disclosure and must be produced.

For the previously mentioned reasons, all documents not specifically mentioned in this Order are privileged, and Mr. Doe's motion to compel production is **DENIED**.

### B. Exhibit 122

Hotchkiss agrees that the last two pages of Exhibit 122 were not privileged and asserted that the non-privileged portion already has been produced to Mr. Doe. Because Mr. Doe no longer contests this disclosure, this issue is **MOOT**.

### C. Exhibit 17

Following the supplemental briefing requested at the September 11, 2018 telephonic status conference, Hotchkiss argued that Exhibit 17, consisting of settlement agreements between Hotchkiss and third parties, must be kept confidential under terms that Hotchkiss cannot unilaterally waive. ECF No. 241.

In response, Mr. Doe argues that Hotchkiss has no basis for withholding the confidential information given the breadth of the protective order already in place. ECF No. 242. Moreover, the settlement agreements would likely be highly probative of whether Hotchkiss was on notice related to the present matter. Alternatively, Mr. Doe is open to a protective order regarding Exhibit 17 that would redact the names of the victims, allow Hotchkiss to extract the relative and probative facts to not include attorney impressions, or stipulate to Hotchkiss divulging the number of reports and incidents of sexual abuse between 1970 and 1987. With respect to Exhibit 17, the Court agrees with Mr. Doe.

Although Exhibit 17 deals with settlement agreements, these agreements do not fall into the area of attorney-client privilege or attorney work product. *Macdermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 189 (2d Cir. 2016) (finding that the Second Circuit has "encouraged district courts to 'take a liberal view' toward the withdrawal of a claim of privilege,

which 'allows adjudication based on consideration of all the material facts'") (citing *United States v. 4003–4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 84 (2d Cir. 1995)). Indeed, these documents have been executed by parties other than Hotchkiss. The Court therefore will require the disclosure of Exhibit 17 and, to the extent a protective order is necessary, the parties shall try to reach an agreement on this issue and report back to the Court by November 9, 2018.

## IV. CONCLUSION

For the foregoing reasons, after an *in camera* review, the Court orders the disclosure of Exhibit 17. To the extent that a protective order is necessary regarding the information ordered disclosed here, the parties shall seek to reach an agreement on this issue and report back to the Court by November 9, 2018.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of October, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE