UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, | : | No.: 3:15-CV-00160-VAB |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE HOTCHKISS SCHOOL, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S MOTION TO REOPEN THE CASE AND ENFORCE THE MEMORANDUM OF UNDERSTANDING

Pursuant to Federal Rule of Civil Procedure 60(b), Rule 41 of the Local Civil Rules of the United States District Court for the District of Connecticut, and this Court's Pretrial Preferences, Plaintiff John Doe respectfully moves to reopen the case that was administratively closed at the premature, unilateral request of Defendant The Hotchkiss School (without the consent of the Plaintiff) on September 11, 2019 [Dkt. 321], and to enforce the Memorandum of Understanding ("MOU")[1] signed by the parties on August 27, 2019.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 2019, after mediation before JAMS mediator Jerry P. Roscoe, Esq., Plaintiff and Hotchkiss entered into an oral agreement that settled this case, the material terms of which the Parties memorialized into a mutually signed MOU. The terms agreed upon—which were and are undisputed—include: (i) payment by Hotchkiss to Plaintiff of a fixed amount of money to compensate Plaintiff for physical injuries and physical sickness that resulted from the events described in the complaint in the case (the "Complaint"); (ii) confidentiality of the amount

---

[1] The Memorandum of Understanding is attached as Ex. B, to the Declaration of Wendy R. Fleishman, Esq. submitted as part of a Motion to file the Declaration under Seal.

- 1 -

of the settlement; (iii) confidentiality of Plaintiff's legal name.  In addition, the Parties agreed

that: (iv) The Hotchkiss School will deliver a formal apology to Plaintiff for the events described

in the complaint in this case; (v) the Parties will stipulate to dismiss this case after Plaintiff

receives the settlement payment and the apology; (vi) The Hotchkiss School will establish a

Sexual Misconduct Advisory Committee with specified membership to address past sexual

assaults and sexual misconduct at the School and to address and prevent future sexual assaults

and sexual misconduct at the School; and (vii) subject to satisfaction of the agreed consideration,

Plaintiff will release Hotchkiss of liability to Plaintiff for the claims in the complaint in this case.

The MOU also stated Hotchkiss would perform under the contract within 30 days of the

execution of the release.

On August 29, 2019, Hotchkiss requested the Court administratively dismiss the case by

unilaterally representing to the Court that Parties had settled this case.  Plaintiff specifically had

asked that Hotchkiss wait to notify the Court of the settlement until after the settlement

documentation and release were signed. (Ex. D to the Fleishman Dec., Email from Annika K.

Martin to Jeff White dated August 28, 2019)   Notwithstanding Plaintiff's non-consent and

request to wait, Hotchkiss went ahead and told the Court the case was settled in full, knowing

full well this would result in the case being administratively closed per Local Rule 41(b).

The MOU includes language that a settlement documentation and release will follow.  The

Parties have exchanged multiple drafts of language for the release from shortly after the

Settlement Agreement had been agreed upon on August 27, 2019 through the present.  There

have been several consent motions to extend the time under Local Rule 41. Good cause existed

each time to grant the extensions because the Parties needed additional time to resolve certain

open issues presented by the competing documentation formalities of the release (the "Release")

submitted across the table by each side to the action.  The Parties had telephonic and face to

- 2 -

face meetings, both with the benefit of the mediator and alone.

On December 18, 2020, the parties met again, without the mediator, at the offices of Lieff Cabraser Heimann & Bernstein in New York, NY, with Hotchkiss alleging it brought with it to deliver to Doe that day the Settlement Payment and a signed letter of apology.  The Release was and is intended to memorialize the long-agreed settlement and to be limited to the claims set forth in the Complaint.  Towards the end of that December 18 meeting, the parties had come to the "final" release language, which Hotchkiss was happy with and stated it agreed was acceptable, and was asking Plaintiff to sign.

At the last minute, Plaintiff suggested adding an exclusion from the release for unknown future injuries caused by the events described in the Complaint, where the future injury or disease had not, as yet, manifested itself. Plaintiff raised a concern that if he were to suffer future damages from an unknown sexually transmitted disease in the future as a result of the sexual assaults described in the complaint, that he did not want to waive his right to bring a claim for those hypothetical injuries. Hotchkiss did not agree to add that language of exclusion. In compromise, Plaintiff then backed off his countermove position, and agreed to sign the "final" Release that Hotchkiss had wanted just prior to his suggestion of the exclusion language. A notary was brought into the room and Plaintiff began to sign the Release. But then, suddenly, literally as Plaintiff was signing his name, Hotchkiss announced it could not sign it – the very Release Hotchkiss itself had been pushing for Plaintiff to sign just moments earlier in the negotiation, expressing newfound concern about hypothetical future claims for injuries that had not as yet manifested and are extremely unlikely to be able to prove. Hotchkiss refused to discuss anything further at that time and walked out.  Two days later, Plaintiff executed the "final" Release—which was the version Hotchkiss had wanted Plaintiff to sign just before its sudden change of heart – and sent it to Hotchkiss, seeking it to be co-signed and returned (Ex. E to the

- 3 -

Fleishman Dec.)[2]. The Release as it stands is acceptable to the Plaintiff.

On Friday night, January 3, 2020, Hotchkiss proposed new additional language to add to the Release that is unacceptable to Plaintiff because it would expansively broaden the release far beyond the claims in the Complaint (or anything discussed during the four months of negotiations the parties had engaged in over the release language). (Ex. F to the Fleishman Dec.) Plaintiff and Defendant counsel spoke multiple times about the newly proposed language but could not reach any agreement.

On Monday, January 13, 2020, Hotchkiss proposed additional language that somewhat more limited, however still broadens the release beyond claims having to do with the Professor's alleged misconduct.  The new language is attached to the Fleishman Dec, Ex. G. The redlined version is the newly proposed language.

Plaintiff refused to sign this proposed language because it substantially broadens the agreed upon Release.  Plaintiff and Defense had multiple discussions since January 13, 2020, however have not reached an agreement.  Plaintiff contends that the Release as agreed upon initially on December 18, 2019, adequately protects Hotchkiss from future claims by Mr. Doe concerning any injuries or illnesses that arise as a result of the misconduct of the Professor.  The broader language would preclude other potential injuries that may occur far into the future, hypothetically such as mesothelioma from exposure to asbestos at Hotchkiss, while Doe was a student there.

Plaintiff does not agree with Hotchkiss' characterization of the January 13, 2020 proposed language as set forth in the Motion for a Conference Call with the Court. [Dkt. #335]

Now, the Parties have once again reached an impasse. Plaintiff seeks immediate relief in the form of reopening the case and enforcing the MOU.

---

[2] The Release as drafted and signed by Plaintiff as of December 20, 2019 is attached as Ex. E to the Fleishman Dec., under seal.

Both Parties respectfully request a conference before this Honorable Court before so that the open dispute may be finally resolved; and, extend the time to address this issue before the Court as this case would need to stay open beyond the current ordered schedule.

Currently, the docket will close on this matter on January 17, 2020.

## **ARGUMENT**

## **Reopening This Case Is Warranted.**

Fed. R. Civ. P. 60(b) "grants courts 'broad authority'" to reopen a case for several enumerated reasons, including "mistake, inadvertence, [or] surprise[.]" *Canales v. Sullivan*, 745 F. Supp. 978, 979 (S.D.N.Y. 1990), *rev'd on other grounds*, 947 F.2d 45 (quoting *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 849, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988)). The court may also reopen judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b)(6) is also warranted "where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994).   Accordingly, Rule 60(b)(6) permits a trial court to "grant relief when appropriate to accomplish justice." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (citation and internal quotation marks omitted.)

Here, reopening the case is warranted because it is necessary to enforce the MOU; failure to reopen the case would "work an extreme and undue hardship" on Plaintiff by leaving him without the ability to enforce the parties binding agreement and force performance by Hotchkiss under that agreement without having to commence an entirely new lawsuit, which would be economically inefficient as this Court already has jurisdiction to enforce the Settlement Agreement in this case.

Moreover, reopening is particularly warranted here where the case should never have been administratively closed to begin with, given that Hotchkiss unilaterally – despite Plaintiff's

- 5 -

refusal of consent – represented to the Court that the case had been settled in full. Hotchkiss knew full well that representation would cause the administrative closing of the case, but did so anyway in order to take it "out from under the gun of imminent trial." *Omega Eng'g, Inc. v. Omega, SA*, No. CIV.3:98CV2464AVCTPS, 2004 WL 2191588, at *10 (D. Conn. Aug. 12, 2004), *aff'd sub nom. Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437 (2d Cir. 2005).

## The Memorandum of Understanding Is Binding, Unambiguous, And Should Be Enforced.

This Court also has the authority to enforce the MOU, because a court has the power to enforce a settlement agreement reached in a case pending before it. *Acot v. New York Med. College*, 99 Fed. Appx. 317, *3 (2d Cir. 2004). And "[a] court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court[.]" *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir.1986) (citations omitted). This authority is "not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes." *Brown v. Nationscredit Commercial*, No. 3:99cv592 (EBB), 2000 WL 888507, *1 (D. Conn. June 23, 2000) (citations omitted) (granting motion to enforce, ordering defense counsel to formalize the settlement agreement in documentation that reflects the settlement agreement culminated at the mediation, without adding any additional onerous terms). It "has its basis in the policy favoring the settlement of disputes and the avoidance of costs and time-consuming trials." *Id*.

A settlement is still binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time when those terms are reduced to writing. *Id*. at *2. "Once a settlement is reached, the agreement may not be repudiated by either party. Rather, such an agreement will be summarily enforced by the court." *Id*.; *see also V'Soske v. Barwick*, 404 F.2d 495 (2d Cir.1968) (agreement enforced against defendant despite failure to

- 6 -

agree on several significant terms).

As this District put it, in an analogous situation:

Reduced to its simplest terms, [defendant] has repudiated a contract which it entered into during a negotiation session held under the aegis of the U.S. District Court. There is no doubt it reached an agreement with [plaintiff], no doubt it settled this case, and no doubt it reported the case settled to a magistrate judge and later to a district judge in open court. Having taken itself out from "under the gun" of imminent trial before Judge Covello, [defendant] then promptly broke its word, reneged on the contract, and now attempts to use the contract it broke as a springboard from which to negotiate an even better deal. This is what happened here. It should not be countenanced by a United States court.

*Omega*, 2004 WL 2191588, at *10.

There can be no dispute a binding agreement was formed on August 27, 2019, when the parties signed the MOU. That agreement indicates Hotchkiss will pay the money within 30 days of the release being signed. Plaintiff has performed his part under the agreement—he has signed the very release language Hotchkiss wanted him to sign prior to its change of heart. That Hotchkiss now suddenly has decided it wants a much broader release than it wanted throughout four months of negotiating the release language does not alter the fact that Hotchkiss has received a signed release and now must perform its part under the MOU and pay the settlement amount. *See Meridian Partners, LLC v. Dragone Classic Motorcars, Inc*., No. FBTCV146041242, 2015 WL 3974615, at *9 (Conn. Super. Ct. May 29, 2015), *aff'd*, 171 Conn. App. 355, 157 A.3d 87 (2017) (finding the terms of settlement agreement clear and unambiguous and should be enforced, despite any disagreement regarding contents of the release and settlement agreement form). "'When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect.'" *Acot v. New York Medical College*, 99 Fed.Appx. 317, 318 (2d Cir. 2004) (quoting *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994)). The MOU should be enforced.

- 7 -

**CONCLUSION**

Plaintiff respectfully requests that this Court reopen the case and grant Plaintiff's motion

to enforce the Memorandum of Understanding.

Dated:  January 17, 2020

Respectfully,

By: _____
    Wendy R. Fleishman

Wendy R. Fleishman (admitted *Pro Hac Vice*)
Annika K. Martin (admitted *Pro Hac Vice*)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592
wfleishman@lchb.com
akmartin@lchb.com
pandrews@lchb.com

Hugh W. Cuthbertson
Glenn Duhl
ZANGARI COHN CUTHBERTSON DUHL
  & GRELLO P.C.
59 Elm Street, Suite 400
New Haven, CT  06510
Telephone:  203.789.0001
Facsimile:  203.782.2766

*Attorneys for Plaintiff John Doe*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2020, a copy of foregoing was served via electronic mail and U.S. Mail on the following:

Bradford S. Babbitt, Esq.
bbabbitt@rc.com
Jeffery J. White, Esq.
jwhite@rc.com
Kathleen E. Dion, Esq.
kdion@rc.com
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

_____
Wendy R. Fleishman

1875183.10