## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHN DOE,
    *Plaintiff*,

    v.

HOTCHKISS SCHOOL,
    *Defendant.*

No. 3:15-cv-160 (VAB)

## RULING AND ORDER ON MOTION AND CROSS-MOTION
## TO ENFORCE SEPARATE SETTLEMENT AGREEMENTS

On February 5, 2015, John Doe ("Plaintiff") sued The Hotchkiss School ("Defendant" or "Hotchkiss") for state-law tort claims related to sexual abuse. Compl., ECF No. 1 (Feb. 5, 2015).

After the withdrawal of Mr. Doe's third set of counsel, Hotchkiss moved to enforce the current settlement agreement. Mot. to Enforce the Settlement Agreement, ECF No. 364 (Mar. 19, 2020).

After obtaining a fourth set of counsel, Mr. Doe moved to enforce a settlement agreement allegedly entered into on August 27, 2019, and confirmed by a signed memorandum of understanding. Pl.'s Cross-Mot. to Enforce the Aug. 27, 2019 Settlement Agreement, ECF No. 380 (Apr. 30, 2020).

For the reasons discussed below, Hotchkiss's motion to enforce the current settlement agreement is **GRANTED**, Mr. Doe's cross-motion to enforce the August 27, 2019 settlement agreement and memorandum of understanding is **DENIED**, and this case is **DISMISSED.**

1

## I.      BACKGROUND

The Court assumes familiarity with the factual allegations and protracted procedural history of this case, *see* Order and Ruling on Mot. for Summ. J., ECF No. 296 (Mar. 8, 2019), and thus focuses on those issues most immediately necessary for purposes of the pending motions.

Since the filing of this case, Mr. Doe has had three sets of counsel withdraw. *See* Docket Entries, ECF Nos. 41 (Apr. 15, 2016); ECF Nos. 105–07 (July 5, 2017); ECF No. 360 (Mar. 13, 2020) (allowing Mr. Doe's third set of counsel to withdraw due to a disagreement as to "voluntary dismissal of the case at this time").

On September 11, 2019, the Court entered an Order under Federal Rule of Civil Procedure 41(b), noting that "[t]he parties have reported that this action has been settled in full," and allowing the parties to file a stipulation of dismissal or move to reopen the case by October 11, 2019. 41(b) Order, ECF No. 321 (Sept. 11, 2019).

The Court granted numerous motions for extensions of time filed by Mr. Doe. Docket Entries, ECF Nos. 322–33.

On March 12, 2020, Mr. Doe's third set of counsel—Lieff Cabraser Heimann & Bernstein LLP and Zangari Cohn Cuthbertson Duhl & Grello P.C.—moved to withdraw. Mot. to Withdraw as Counsel, ECF No. 353 (Mar. 12, 2020). They stated that it was "Counsel's position that this matter is now fully settled and should be dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). However, Mr. Doe does not agree with Counsel's position and will not agree to voluntary dismissal of the case at this time." *Id.* at 1.

On March 13, 2020, after holding a telephonic status conference, the Court allowed Mr. Doe's third set of counsel to withdraw, and set a new schedule for Hotchkiss to move to enforce

the current settlement agreement and for Mr. Doe to file either a stipulation of dismissal or his response to Hotchkiss's motion. Order, ECF No. 60 (Mar. 13, 2020).

On March 19, 2020, Hotchkiss moved to enforce the most recent settlement agreement, signed by Mr. Doe on December 20, 2019 ("Current Settlement Agreement"). Mot. to Enforce the Settlement Agreement, ECF No. 364 (Mar. 19, 2020) ("Def.'s Mot."); *see also* Ex. A: Settlement Agreement and Release of All Claims, ECF No. 364-1 (Mar. 19, 2020) ("Current Settlement Agreement").

Hotchkiss argues that "[a]fter substantial negotiation and mediation, the parties agreed to settle all of Plaintiff's claims[1] pursuant to" the Current Settlement Agreement. Def.'s Mot. at 1. According to Hotchkiss, the relevant events are as follows:

- "Plaintiff signed and notarized the Agreement on December 20, 2019 and Hotchkiss'[s] representatives, Elizabeth Hines and Robert Gould, signed and notarized the Agreement on February 10, 2020 and February 13, 2020, respectively." *Id.* at 2.

- On February 24, 2020, "Hotchkiss delivered full payment in accordance with the [Current Settlement] Agreement to Plaintiff's counsel," and "the net proceeds were subsequently distributed to Plaintiff." *Id.* at 3.

- "On March 6, 2020, Hotchkiss requested authorization to file stipulations of dismissal in the above-captioned action, as well as several related actions." *Id.*

- On March 12, 2020, Plaintiff's then-counsel moved to withdraw from the case. *Id.* at 4.

According to Hotchkiss, "[b]y signing the [Current Settlement] Agreement, both parties mutually and voluntarily agreed to resolve the entirety of their dispute," *id.* at 6, and Hotchkiss

---

[1] The related actions are *Hotchkiss School v. Doe*, No. 3:18-cv-00878 (VAB) (D. Conn.); *Hotchkiss School v. Doe*, No. 3:18-mc-0037 (VAB) (D. Conn.); *Hotchkiss School v. Doe*, No. 3:19-cv-00669 (VAB) (D. Conn.); and *Hotchkiss School v. Doe*, No. 1:18-mc-0081 (S.D.N.Y.).

3

has "fully performed all obligations[2] necessary under the Agreement for dismissal of this action and related actions," while "Plaintiff has refused to comply with his obligations," *id.* at 7. To the extent Plaintiff's noncompliance is due to the Apology failing to meet the criteria in the settlement agreement, Hotchkiss argues that this claim "lacks merit." *Id.* In Hotchkiss's view, Mr. Doe "cannot have it both ways" by "retain[ing] the benefits of his potential claims" while "obtaining consideration from Hotchkiss [and] refusing to dismiss the action." *Id.* at 9 (citation and internal quotation marks omitted).

On April 30, 2020, Mr. Doe timely cross-moved to enforce an oral settlement allegedly entered into on August 27, 2019, and confirmed by Hotchkiss in a signed memorandum of understanding ("Memorandum of Understanding"). Pl.'s Cross-Mot. to Enforce the Aug. 27, 2019 Settlement Agreement, ECF No. 380 (Apr. 30, 2020); ("Pl.'s Cross-Mot."); Pl.'s Mem. of Law in Opp'n to Def.'s Mot. and In Supp. of Pl.'s Cross-Mot., ECF No. 380-1 (Apr. 30, 2020) ("Pl.'s Opp'n").

Mr. Doe "agrees that this action is settled and should be dismissed," but argues that the Memorandum of Understanding is "the only binding settlement agreement between the parties." Pl.'s Opp'n at 5. Mr. Doe summarizes the relevant events as follows:

- On August 27, 2019, "the parties reached a binding oral settlement agreement . . . partially performed by Hotchkiss that same day and confirmed in a signed Memorandum of Understanding." *Id.*

---

[2] Hotchkiss noted then that the "only remaining obligation by Hotchkiss is the creation of a committee, which did not need to be completed until May 2020 and is not a prerequisite to the filing of stipulations of dismissal." Def.'s Mot. at 7. It has confirmed that it had "recently formed a new advisory committee and invited Plaintiff to serve as a member," consistent with the Current Settlement Agreement. Def.'s Resp. to Pl.'s Cross-Mot. at 11, ECF No. 397 (June 5, 2020).

- "The parties worked to finalize the settlement documentation in subsequent months," and on December 18, 2019, met again without a mediator. *Id.* at 10. At that meeting, after a disagreement "over the meaning and scope of the proposed release, . . . Hotchkiss refused to discuss the matter further and walked out." *Id.*

- "[O]n December 20, 2019, in an effort to compromise," Mr. Doe "unilaterally signed a revised proposal," which Hotchkiss rejected. *Id.* at 11.

- "On January 3, 2020, Hotchkiss characterized the December Draft as a 'signed draft that we told you was not acceptable,'" and later "emailed its proposed counter to the December Draft, which featured an even broader release than before." *Id.*

- Mr. Doe "rejected [Hotchkiss's counter-proposal] immediately," as well as a "second proposal [that] again broadened the scope of the release significantly, but without additional consideration." *Id.*

- On February 11, 2020, after a settlement conference with Magistrate Judge William I. Garfinkel, Mr. Doe allegedly told Hotchkiss Board of Trustees Co-President Robert Gould about his unwillingness to agree to the Current Settlement Agreement. *Id.* at 12–13.

- Afterwards, Hotchkiss "apparently decided to reverse course and 'accept' the rejected-and-withdrawn December Draft by appending two Hotchkiss signature pages." *Id.* at 6. According to Mr. Doe, "Hotchkiss cannot simply resurrect a rejected-and-withdrawn offer, 'accept' it two months later, and enlist this Court in enforcing it." *Id.* He contends that there are "material" differences between the two agreement, namely the scope of the release. *Id.* The Memorandum of Understanding "contemplates a settlement of only 'this lawsuit,' between

'Plaintiff John Doe' and 'Defendant Hotchkiss School,' for 'personal injuries as set forth in the Complaint,'" whereas the Current Settlement Agreement

> release[s] not just Hotchkiss, but a wide set of associated non-parties, including Hotchkiss faculty members and trustees, from "any and all actual or potential" claims that Doe "could have asserted, or could assert at any time in the future," whether "known or unknown, suspected or unsuspected," including claims that "in any way relate to, concern, arise out of, or in any way connect to the facts or allegations contained in the [C]omplaint . . . ."

*Id.* at 6–7. Mr. Doe argues that he "never agreed to, and never accepted, the purportedly counter-signed" Current Settlement Agreement, and "made his position clear to this then-counsel." *Id.* at 13. In his view, he never indicated or intended that by accepting the settlement proceeds, "he was somehow accepting the rejected-and-withdrawn" Current Settlement Agreement. *Id.* at 14. Mr. Doe argues that "the facts overwhelmingly establish that the parties intended to be bound by the" Memorandum of Understanding. *Id.* at 17.

On June 5, Hotchkiss timely responded to Mr. Doe's cross-motion. Def.'s Resp. to Pl.'s Cross-Mot., ECF No. 397 (June 5, 2020) ("Def.'s Resp.").

Hotchkiss notes that, on December 18, 2019, "as soon as a deal seemed imminent, Plaintiff began to discuss the possibility of suing additional parties, including Hotchkiss employees or representatives, for claims similar to those raised in the above-captioned action, as well as suing Hotchkiss for other, unrelated claims." Def.'s Resp. at 5. Hotchkiss thus "decided not to sign the settlement agreement given the threats of further litigation." *Id.* As to the private conversation on February 11, 2020, between Mr. Doe and Mr. Gould, Mr. Gould "specifically recalls the conversation . . . and, at no point did Plaintiff ever communicate that he was revoking or withdrawing any offer." *Id.* at 6.

6

Nor did Mr. Doe's third set of counsel ever notify Hotchkiss that Mr. Doe would no longer accept the terms of the Current Settlement Agreement. *Id.* As to the issues with the written apology to Mr. Doe, Hotchkiss admits the initial apology did not contain "the specific, agreed upon language," which was only set forth in Exhibit A to the Current Settlement Agreement. *Id.* at 9. In Hotchkiss's view, based on Mr. Doe's own filings, the only settlement agreement was the Current Settlement Agreement, which also supersedes any earlier agreement based on its full merger and integration clause. *Id.* at 9, 12.

Even if the parties failed to agree to the terms initially, Hotchkiss argues that "Plaintiff would still be bound by the terms of the [Current] Settlement Agreement under the doctrines of ratification and estoppel." *Id.* at 13. Hotchkiss claims it "never rejected Plaintiff's offer prior to accepting the [Current] Settlement Agreement in February 2020." *Id.* at 14. And regardless, Hotchkiss argues that Mr. Doe's actions—"remain[ing] silent after receiving a copy of the signed [Current] Settlement Agreement, accept[ing] the proceeds of the Settlement Payment and the Apology, and request[ing] a corrected Apology to match the terms of the [Current] Settlement Agreement"—all "reasonably suggested to Hotchkiss that a fully enforceable agreement had been reached, constituting valid acceptance under Connecticut law." *Id.* at 18.

In Hotchkiss's view, "[i]nstead of taking any action that might have suggested, let alone established, that he had repudiated the terms of the Settlement Agreement, Plaintiff accepted and spent a substantial portion of the Settlement Payment, accepted the Apology, and accepted Hotchkiss's invitation to join its advisory committee." *Id.* at 22. According to Hotchkiss, the Memorandum of Understanding "cannot be a mere memorialization of the terms of the settlement adopted in August 2019 because it omits material terms, including the release, the

Apology, the formation of the advisory committee, and many other terms negotiated by the parties last fall." *Id.*

On June 19, 2020, Mr. Doe replied. Pl.'s Reply Mem. of Law in Further Supp. of Pl.'s Cross-Mot., ECF No. 402 (June 19, 2020) ("Pl.'s Reply").

In reply, Mr. Doe argues that the Memorandum of Understanding's "contemplat[ion] [of] the execution of a subsequent 'release and documentation' [ ] does not render it unenforceable." Pl.'s Reply at 8. To refute Hotchkiss's argument that he had ratified the Current Settlement Agreement, Mr. Doe also argues that his "prior counsel was not authorized to accept" the Current Settlement Agreement. *Id.* at 11 (emphasis omitted). According to Mr. Doe, he only accepted the settlement check sent on February 24, 2020, "pursuant to the August Settlement." *Id.* at 12–13. Mr. Doe also claims that equitable estoppel is inapplicable, because he "never misled Hotchkiss," and "Hotchkiss glaringly failed to exercise reasonable diligence to ascertain Doe's true position." *Id.* at 14.

On June 24, 2020, Hotchkiss filed a sur-reply, with the Court's permission. Sur-Reply to Pl.'s Reply, ECF No. 407 (June 24, 2020) ("Def.'s Sur-reply").

In the sur-reply, Hotchkiss argues that "Plaintiff cannot avoid the simple fact that he silently accepted Hotchkiss's signed Settlement Agreement and Release after receiving it on February 20, 2020." Def.'s Sur-reply at 3. In Hotchkiss's view, Mr. Doe's "silence, coupled with express statements by his former counsel to send the Settlement Payment 'as soon as possible,' operated as acceptance of the settlement as a matter of law." *Id.* "More importantly, regardless of what Plaintiff said to his lawyers and what they said back to him, there can be no dispute that neither Plaintiff nor his lawyers shared any of that information with Hotchkiss or its counsel." *Id.* at 3–4. According to Hotchkiss, "Plaintiff is bound by either the express statements of

acceptance by his former counsel, under the principles of agency law, or by his silent acceptance and retention of the benefits of settlement." *Id.* at 5 (footnote omitted).

On July 15, 2020, the Court held a hearing by videoconference. Minute Entry, ECF No. 414 (July 15, 2020).

On July 16, 2020, Mr. Doe filed a notice of supplemental authority "for the proposition that a party does not receive a 'benefit' for purposes of ratification or estoppel where the party already has an independent contractual right to that benefit[.]" Pl.'s Notice of Suppl. Auth., ECF No. 415 (July 16, 2020) ("Pl.'s Notice").

On July 17, 2020, Hotchkiss responded to this filing. Def.'s Resp. to Pl.'s Notice, ECF No. 416 (July 17, 2020).

## II.   STANDARD OF REVIEW

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom, BBCO/PHD*, 497 F.3d 124 (2d Cir. 2007) (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005)); *Brandt v. MIT Dev. Corp.*, 552 F. Supp. 2d 304, 319 (D. Conn. 2008). "A contract is binding if the parties have mutually assented to the terms, and where the terms of the agreement are 'clear and unambiguous.'" *Omega*, 432 F.3d at 444 (citing *Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 811 (1993) (internal citations omitted)). With respect to mutual assent, "[t]he Connecticut Supreme Court has held that '[a] contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation.'" *Omega*, 432 F.3d at 444 (quoting *Klein v. Chatfield*, 166 Conn. 76, 80 (1974)). "The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives

of the parties, and (3) purposes which they sought to accomplish." *Omega*, 432 F.3d at 444

(citing *Klein*, 166 Conn. at 80).

"A trial court has the inherent power to enforce summarily a settlement agreement as a

matter of law when the terms of the agreement are clear and unambiguous." *Audubon Parking*,

225 Conn. at 811; *see also Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir. 1986)

("Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in

many situations enforceable by entry of a judgment in the original suit. A court's authority to

enforce a settlement by entry of judgment in the underlying action is especially clear where the

settlement is reported to the court during the course of a trial or other significant courtroom

proceedings.").

## III.   DISCUSSION

"A settlement agreement, or accord, is a contract among the parties." *Ackerman v. Sobol*

*Family P'ship, LLP*, 298 Conn. 495, 533 (2010). As a result, its "[s]ummary enforcement is not

only essential to the efficient use of judicial resources, but also preserves the integrity of

settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they

are effectively contracting for the right to *avoid* a trial . . . . To hold that a jury trial is a necessary

predicate to enforcement of a settlement agreement would undermine the very purpose of the

agreement." *Audubon*, 225 Conn. at 812 (emphasis in original).[3]

"In Connecticut, a contract is binding if the parties mutually assent to its terms." *Omega*,

432 F.3d at 444. Because the enforceability of a settlement agreement is determined using

general principles of contract law, the Court must determine the rights and obligations of the

parties. *See Montanez v. D & D Auto, LLC*, 2016 WL 1254199, at *15 (D. Conn. Mar. 29, 2016)

---

[3] Significantly, at oral argument on the pending motions, both parties agreed that an evidentiary hearing was not necessary.

("Under Connecticut law, settlement agreements are generally not enforceable where there has been no final meeting of the minds or where terms of the agreement remain disputed."): *see also Amica Mut. Ins. Co. v. Welch Enter., Inc.*, 114 Conn. App. 290, 295 (2009) ("Only when the terms are clear and unambiguous can the court enforce the settlement agreement.").

"The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." *Barnard v. Barnard*, 214 Conn. 99, 110 (1990). Indeed, "[i]n ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction." *Harbour Pointe, LLC v. Harbour Landing Condo. Ass'n, Inc.*, 300 Conn. 254, 260 (2011) (quoting *Cantonbury Heights Condo. Ass'n, Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 734 (2005)). And "[w]here the language is unambiguous, we must give the contract effect according to its terms." *Id.* "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id.*

"Where a contract term is ambiguous, the court may properly discern the intent of the parties as to the meaning of the contract by considering extrinsic evidence." *Censor v. ASC Tech. of Conn., LLC*, 900 F. Supp. 2d 181, 194 (D. Conn. 2012) (citing *United Illuminating Co. v. Wisvest-Conn., LLC*, 259 Conn. 665, 675 (2002)). "Contract terms are considered ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997).

Having outlined these basic principles, the Court will address the respective alleged settlement agreements in turn.

### A.  The August 27, 2019 Settlement Agreement

"The Connecticut Supreme Court has held that '[a] contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation.'" *Omega*, 432 F.3d at 444 (quoting *Klein*, 166 Conn. at 80). The Memorandum of Understanding, the basis for the alleged August 27, 2019 Settlement Agreement, lacks relevant terms. The handwritten Memorandum of Understanding, signed August 27, 2019, states in its entirety:

> Plaintiff John Doe and Defendant Hotchkiss School agreed to settle this lawsuit. There are two confidential terms: the settlement amount [] and that Mr. Doe's name remains anonymous. The settlement is for personal injuries as set forth in the Complaint.
>
> The release and documentation to follow within five (5) business days. Payment and settlement proceeds with[in] thirty (30) days of settlement execution.

Ex. C: Confidential Memorandum of Understanding, ECF No. 381-3 (Apr. 30, 2020). Based on the clear and unambiguous language of the Memorandum of Understanding, this document did not constitute a final binding settlement agreement, because a "release and documentation [were] to follow." *Id.* In other words, "'something remain[ed] to be done to establish the contractual relation.'" *Omega*, 432 F.3d at 444 (quoting *Klein*, 166 Conn. at 80).

Moreover, by continuing to engage in negotiations in the months afterwards, the parties' conduct also anticipated the execution of a final settlement agreement. *See Montanez*, 2016 WL 1254199, at *15 ("Under Connecticut law, settlement agreements are generally not enforceable where there has been no final meeting of the minds or where terms of the agreement remain disputed."); *Amica Mut.*, 114 Conn. App. at 295 ("Only when the terms are clear and unambiguous can the court enforce the settlement agreement.").

Indeed, after September 11, 2019, when the Court entered its Rule 41(b) order administratively closing the case, Mr. Doe filed four consent motions for extension of time "for the Parties to finalize the settlement and settlement paperwork," specifically because the "additional terms concerning the release remain open and must be resolved to each party's mutual satisfaction." *See* Mot. on Consent for Extension of Time for the Parties to Resolve Open Questions Concerning a Settlement and Finalize the Settlement, ECF Nos. 322, 324, 326, 328 (Oct. 8, 2019; Oct. 28, 2019; Nov. 26, 2019; Dec. 11, 2019). The Memorandum of Understanding thus cannot operate as a final binding settlement agreement, because the parties needed to resolve "open questions." *See id.*

Accordingly, Mr. Doe's cross-motion to enforce the August 27, 2019 Settlement Agreement will be denied.

### B.  The Current Settlement Agreement

The terms of the Current Settlement Agreement are clear and unambiguous—no party argues otherwise. This Court thus may enforce it summarily as a matter of law. *See Audubon Parking*, 225 Conn. at 811 ("A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous."); *see also Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir. 1986) ("Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit.").

Mr. Doe argues, however, that despite his signature on the Current Settlement Agreement, and the subsequent necessary signatures from Hotchkiss, that this Current Settlement Agreement is not binding on him.

The Court disagrees.

First, unlike the alleged August 27, 2019 Settlement Agreement, the Current Settlement Agreement contains all of the relevant terms of the parties, including the specific terms of the release—terms not provided in the alleged August 27, 2019 Settlement Agreement—as well as the precise language of the apology. With the Current Settlement Agreement, nothing "'remains to be done to establish the contractual relation.'" *Omega*, 432 F.3d at 444 (quoting *Klein*, 166 Conn. at 80).

Second, there is no issue as to whether Mr. Doe agreed to be bound by the terms of the Current Settlement Agreement. On December 20, 2019, by signing it before sending it to Hotchkiss, he unequivocally did. *See* Current Settlement Agreement at 7 (bearing the signature of Mr. Doe on the Current Settlement Agreement with the signature and seal of a notary public attesting to its authenticity); *see also Schwarzschild v. Martin*, 191 Conn. 316, 322 (1983) (holding that "a party who signs an arbitration agreement . . . may not later avoid his agreement because of a claim that the other party did not sign the agreement"); *Conn. Bar Ass'n v. U.S.*, 620 F.3d 81, 94 (2d Cir. 2010) (noting that "when [an individual] manifests acceptance by signing the document, the proposed transaction becomes an enforceable contract" (citing *Omega*, 432 F.3d at 444)).

Third, there also is no issue as to whether Mr. Doe has received all of the benefits promised under the Current Settlement Agreement. Mr. Doe acknowledges having received the settlement payment and an apology from Hotchkiss, and that Hotchkiss has created a Sexual Misconduct Advisory Committee. *See* Def.'s Resp. at 8, 11 (noting that consistent with the Current Settlement Agreement, Hotchkiss (1) delivered the settlement payment to Mr. Doe's then-counsel; (2) delivered an initial and revised apology letter, after Mr. Doe claimed it was "not correct" and a "review determined that it did not contain the specific, agreed-upon language

14

set forth" in the Current Settlement Agreement; and (3) formed a new advisory committee and invited Mr. Doe to serve as a member); *see also* Pl.'s Sealed Resp. to Order, ECF No. 384 (May 1, 2020) (accounting for the whereabouts of the settlement payment, but with about 38% of Mr. Doe's portion not returned to an escrow account). Put another way, there is no issue about Hotchkiss's willingness to be bound by and undertake the acts required of it under the Current Settlement Agreement.

Finally, as to whether Mr. Doe, who previously agreed to be bound by the terms of the Current Settlement Agreement—and received all of its benefits—has a legal basis for repudiating the Current Settlement Agreement and should not be bound by its terms, the answer is no.

There is nothing in this record suggesting that Mr. Doe, himself or through his counsel, expressed to Hotchkiss any intent to repudiate the Current Settlement Agreement before Hotchkiss signed it. *See Neiman v. Yale Univ.*, 270 Conn. 244, 252 (2004) ("'Repudiation can occur either by a statement that the promisor will not perform or by a voluntary, affirmative act that indicates inability, or apparent inability, substantially to perform.'" (quoting *Gilman v. Pedersen*, 182 Conn. 582, 584 (1981))). As a result, in the absence of such an expression, the Court will enforce the Current Settlement Agreement against Mr. Doe. While Mr. Doe argues that he adequately repudiated the Current Settlement Agreement by his words to his prior (and third set of counsel), both before Hotchkiss signed it and afterwards, the Court disagrees.

"[I]t is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal, and within the scope of the agent's employment." *Maharashi Sch. of Vedic Scis., Inc. (Conn.) v. Conn. Constitution Assocs. Ltd. P'ship*, 260 Conn. 598, 606 (2002) (internal citations omitted). "An agent's authority may be actual or apparent." *Id.* (citing *Hallas v. Boehmke & Dobosz, Inc.*,

239 Conn. 658, 674 (1997)). "Apparent authority is that semblance of authority that a principal, through his own acts or inadvertences, causes or allows third persons to believe the principal's agent possesses." *Id.* at 607 (citing *Hallas*, 239 Conn. at 674). "Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal." *Ackerman*, 298 Conn. at 508 (internal citations omitted). "The same principles apply to the relationship between attorneys and their clients." *Id.* at 509 (citations omitted). "[T]hus, an attorney with apparent authority may enter into a settlement agreement that is binding on the client." *Id.* at 510 (citing 1 Restatement (Third), Agency § 3.03 (2006)).

Connecticut courts "have repeatedly held that an agent with implied or apparent authority may bind the principal to an enforceable settlement agreement." *Id.* at 510–11 (collecting cases); *see also In re Artha Mgmt., Inc.,* 91 F.3d 326, 329 (2d Cir.1996) (although decision to settle case rests with client and client does not automatically bestow authority on retained counsel, unique nature of attorney-client relationship and public policy favoring settlements support presumption that "an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so"); *Yale Univ. v. Out of the Box, LLC*, 118 Conn. App. 800, 807 (2010) (holding that trial court "properly determined that the actions and inactions of the plaintiff, the principal, caused or allowed the defendant reasonably to believe that . . . the agent [attorney][] had the [apparent] authority to enter into and to bind the plaintiff to the settlement with the defendant").

Here, throughout the parties' course of dealing and settlement negotiations, there is no indication in writing to Hotchkiss that Mr. Doe's then-counsel could not accept a settlement agreement on his behalf, and certainly not one that he had already signed. *See Ackerman*, 298 Conn. at 512 ("Third parties who interact with the principal through the agent will naturally and

16

reasonably assume that the agent has authority to do acts consistent with the agent's position or

role unless they have notice of facts suggesting that this may not be so.").

Furthermore, Mr. Doe did not take any immediate action to repudiate the Current

Settlement Agreement after Hotchkiss signed it. Instead, he began spending the settlement funds,

and he represented to the Court, through his then-counsel, that he "does not believe that the

Apology Letter meets the criteria called for in the settlement agreement." Am. Mot. to Withdraw

as Counsel, ECF No. 358 (Mar. 13, 2020). As the Connecticut Supreme Court has made clear:

"Silence may constitute a manifestation when, in light of all the circumstances, a reasonable

person would express dissent to the inference that other persons will draw from silence. Failure

then to express dissent will be taken as a manifestation of affirmance." *Ackerman*, 298 Conn. at

511–12 (internal formatting and citations omitted).

Mr. Doe's silence as to the authority of his then third set of counsel to speak for him here

constitutes "a manifestation" to enter the Current Settlement Agreement. Given the dismissal of

his two prior counsel and the subsequent termination of the representation with his third set of

counsel, if Mr. Doe did not want to accept the Current Settlement Agreement, he could have

terminated the relationship with his third set of counsel before accepting—or spending—the

settlement proceeds. [4]

---

[4] Because there is a sufficient basis on this record for Hotchkiss relying on the actions of Mr. Doe's third set of
counsel to effectuate the Current Settlement Agreement, the Court need not and does not inquire into the privileged
attorney-client communications between Mr. Doe and his third set of counsel, communications whose probative
value, to the extent relevant at all to this inquiry, is outweighed by their heavily redacted nature. *See, e.g.*, *In re
Grand Jury Proceedings*, 219 F. 3d 175, 182 (2d Cir. 2000) ("In other words, a party cannot partially disclose
privileged communications or affirmatively rely on privileged communications to support its claim or defense and
then shield the underlying communications from scrutiny by the opposing party." (citations omitted)); *see also
Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012) ("The law of evidence embodies a rule of
completeness requiring generally that adversaries be allowed to prevent omissions that render matters in evidence
misleading. With regard to writings, one cannot introduce only the favorable portion of a document without the
adversary successfully demanding production of the entire writing. The same applies to testimony as to only part of
a privileged communication: the remainder must only be produced." (citations omitted)); *Phoenix Assocs. III v.
Stone*, 60 F.3d 95, 102 (2d Cir. 1995) ("Underlying Rule 106 [of the Federal Rules of Evidence], then, is a principle
of fairness requiring the introduction of an entire or related document if necessary for the fair and impartial

Indeed, even if Mr. Doe's third set of counsel exceeded the scope of their authority to act on his behalf and failed to repudiate Mr. Doe's intention to repudiate the Current Settlement Agreement before or after Hotchkiss signed it, Mr. Doe, by his actions, ratified the Current Settlement Agreement. *See Il Giardino, LLC v. Belle Haven Land Co.*, 254 Conn. 502, 530–32 (2000); *Cohen v. Holloways', Inc.*, 158 Conn. 395, 407–12 (1969). Under the doctrine of ratification, "ratification of the unauthorized act is presumed from failure to disaffirm." *Cohen*, 158 Conn. at 408. In other words, "the authority of the act cannot be challenged because of the injustice which would arise if the strict letter of law as to the necessity for authority of the act were followed." *Id.* (citations and internal quotation marks omitted).

A party cannot "receive and retain the benefits of a contract or transaction and at the same time repudiate liability thereunder or attempt to escape the burdens thereof on the ground that the contract or transaction was not authorized, or that authority therefore was not set forth in its records." *Id.* at 409. Under the doctrine of ratification, "a principal must either ratify the whole transaction or repudiate the whole." *Id.*; *see also Il Giardino*, 254 Conn. at 530 ("Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of the material circumstances." (internal quotation marks and citations omitted)). As a result, Mr. Doe "cannot separate the transaction and ratify the part that is beneficial to him, repudiating the remainder; but if he, of his own election and with full knowledge, accepts and retains the benefits of an unauthorized transaction, he must also accept the part that is not beneficial, and will be held to have ratified the whole." *Cohen*, 158 Conn. at 409 (citations omitted).

---

understanding of the admitted portion or document." (internal quotation marks and citation omitted)). In any event, as discussed below, regardless of what Mr. Doe's third set of counsel did or did not do, Mr. Doe, through his own actions, ratified the Current Settlement Agreement.

"In order to ratify the unauthorized act of an agent and make it effectual and obligatory upon the principal, the general rule is that the ratification must be made by the principal with a full and complete knowledge of all the material facts connected with the transaction to which it relates." *Updike, Kelly & Spellacy, P.C. v. Beckett*, 269 Conn. 613, (2004) (quoting *Il Giardino*, 254 Conn. at 530). Furthermore, "'parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by accepting and acting on the contract or by ratifying the contract, or by the acceptance by one of the performance of the other.'" *Ahrens v. Dunkin' Brands, Inc.*, No. 3:09-cv-186 (VLB), 2011 WL 60517, at *8 (D. Conn. Jan. 4, 2011) (quoting *Schwarzschild*, 191 Conn. at 321–22).

Here, Mr. Doe had "full and complete knowledge of all the material facts connected with the" Current Settlement Agreement. In fact, as discussed above, he signed it, a signature attested to by a notary public. *See* Current Settlement Agreement at 7 (bearing Mr. Doe's signature); *cf. Botticello v. Stefanovicz*, 177 Conn. 22, 28 (1979) (reversing trial court finding of ratification against a spouse where, *inter alia*, "she had not signed" the underlying written agreement). Mr. Doe also ratified "the part" of the Current Settlement Agreement "beneficial to him," by accepting and then spending some of the settlement proceeds sent by Hotchkiss under the Current Settlement Agreement. *See* Pl.'s Sealed Resp. to Order, ECF No. 384 at 2 (May 1, 2020) (noting that, after receiving the settlement funds disbursed to him, rather than return the money, Mr. Doe spent a significant portion "between receipt of the settlement payment and Monday, March 16, 2020").

To be clear, ratification here is not based only on Mr. Doe's acceptance and spending of spending settlement proceeds. "[I]f the original transaction was not purported to be done on account of the principal, the fact that the principal receives its proceeds does not make him a

party to it." *Botticello*, 177 Conn. at 29 (quoting the Restatement (Second), Agency § 98, comment f (1958)). In *Botticello*, which involved a real estate transaction, the husband "at no time purported to be acting on his wife's behalf, as is essential to effective subsequent ratification." *Id.* Mr. Doe's third set of counsel, however, did purport to act on his behalf with respect to the Current Settlement Agreement and thus, Mr. Doe's subsequent actions—actions clearly consistent with the Current Settlement Agreement's acceptance—result in its ratification. Having ratified it, Mr. Doe "cannot separate the transaction" by "repudiating the remainder" and "will be held to have ratified the whole."

Likewise, Mr. Doe cannot disclaim his ratification based on an alleged "independent contractual right" or claim to the received and partially spent settlement proceeds. Pl.'s Notice at 1. An "independent claim" would have to be a claim not based on the Current Settlement Agreement. *See, e.g.*, *Weeks v. United States*, 144 Fed. Cl. 34, 50 (Ct. Fed. Cl. 2019) ("HUD did not secure Ms. Weeks's voluntary resignation via a settlement agreement involving Public Housing. Rather, HUD secured the termination of Ms. Weeks's employment via the Voluntary Compliance Agreement executed between Fair Housing and the Opp Housing Authority."); *Kern v. J.L. Barksdale Furniture Corp.*, 224 Va. 682, 686 (1983) (finding that the party had "an independent claim on the items in question" because the party had already paid the agent for the same goods). And, given the incompleteness of the alleged August 27, 2019 Settlement Agreement, as discussed above, the Current Settlement Agreement is the only enforceable agreement between the parties. *See, e.g.*, Section 6.2, Current Settlement Agreement at 5 ("This Agreement constitutes the complete and entire agreement and understanding of the Parties and may not be modified or changed by any prior or subsequent oral agreement, and this Agreement fully supersedes any prior agreements or understandings between the Parties, whether written or

oral. It is the intention of the Parties that this paragraph be construed as a merger clause, and that this Agreement be construed as an integrated document. No amendment or variation of the terms of this Agreement shall be valid unless made in writing and signed by the Parties."). In short, Mr. Doe has no "independent claim" to the settlement proceeds he has received and partially spent, except under the terms of the Current Settlement Agreement.[5]

As a result, the Court will enforce the Current Settlement Agreement. Moreover, based on a review of the Current Settlement Agreement, no further enforcement of this settlement or any other action in this case is necessary. This Court therefore lacks further jurisdiction over this case.[6] *See, e.g., U.S. v. Juvenile Male*, 564 U.S. 932, 936 (2011) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed."); *see also Benway v. Aldi*, No. 3:19-cv-208 (VAB), 2019 WL 4762117, at *6 (D. Conn. Sept. 29, 2019) ("A case becomes moot when there is no longer an ongoing injury that can be redressed through judicial action because the 'issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013))).

---

[5] As discussed above, Mr. Doe repeatedly told the Court that "additional terms concerning the release remain open and must be resolved to each party's mutual satisfaction." *See* Mot. on Consent for Extension of Time for the Parties to Resolve Open Questions Concerning a Settlement and Finalize the Settlement, ECF Nos. 322, 324, 326, 328 (Oct. 8, 2019; Oct. 28, 2019; Nov. 26, 2019; Dec. 11, 2019). With the parties having resolved those "open questions," Mr. Doe now cannot argue credibly that he had an "independent claim" to receive the settlement proceeds when Hotchkiss sent them, particularly given the timing of when these funds were sent, in addition to the other communications with Hotchkiss after Hotchkiss signed the Current Settlement Agreement. *See* Am. Mot. to Withdraw as Counsel, ECF No. 358 (Mar. 13, 2020) (stating that Mr. Doe "does not believe that the Apology Letter meets the criteria called for in the settlement agreement"). Put another way, without a resolution over the terms of the release which before the Current Settlement Agreement, according to Mr. Doe, "remain[ed] open," Mr. Doe had no viable independent claim to receive the payment of the settlement proceeds.

[6] While Hotchkiss seeks attorney's fees and costs related to the enforcement of the Current Settlement Agreement, Def.'s Resp. at 29, and the Court itself noted that sanctions, including the awarding of attorney's fees and costs, might be warranted if Mr. Doe's opposition proved to be without merit, Order, ECF No. 360 at 5–7, the Court finds that no such award is either appropriate nor warranted, having reviewed the record in its entirety.

Accordingly, having determined that the Current Settlement Agreement is enforceable and that the respective rights of the parties under the Current Settlement Agreement now have been fulfilled, this case will be dismissed and definitively closed.

**IV.    CONCLUSION**

For the reasons discussed above, Hotchkiss's motion to enforce the current settlement agreement is **GRANTED**, Mr. Doe's cross-motion to enforce the August 27, 2019 settlement agreement and memorandum of understanding is **DENIED**, and this case is **DISMISSED**.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of July, 2020.

    /s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE